IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| ROBERT STEPHEN LIGHTFOOT REYNOLDS,<br><br>                                    Plaintiff.<br><br>           v.<br><br>ROBERT & DIANE ELLISON FAMILY TRUST, et al.,<br><br>                                    Defendants. | Civil Action Number 3:05CV854-JRS |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as pro se Plaintiff Robert Reynolds's Motions for Summary Judgment and Sanctions. For the reasons stated herein, Defendants' Motion to Dismiss, viewed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b), is GRANTED. Plaintiff's Motions for Summary Judgment and Sanctions are both DENIED.

### I.   BACKGROUND

Plaintiff filed his Complaint on December 14, 2005, four days after the occurrence of an incident that serves as the basis for his allegations of: 1) assault and battery; 2) false arrest and wrongful imprisonment; and 3) outrageous conduct. The Complaint also contains several allegations relating to a scheme in which Defendants were allegedly committing fraud by holding their business out to be affiliated with the Vietnam Veterans of America charitable organization. In light of this Court's February 1, 2006 Order granting Plaintiff's "Motion to Withdraw Assertion of Ongoing Fraud," as well as Plaintiff's and Defendants' subsequent representations to the Court, however, the Court will not consider

any claims of fraud.  With respect to the allegations presently before the Court, Plaintiff's Complaint makes the following factual representations clear.

On December 10, 2005, Plaintiff was standing on a sidewalk near the entrance of Fan Tastic Thrift on West Main Street in Richmond, Virginia.[1]  At some point soon thereafter, at the request of Fan Tastic Thrift's management, an off-duty City of Richmond sheriff's deputy (the "deputy") working as a security guard for Fan Tastic Thrift allegedly "assaulted and battered" Plaintiff "and then proceeded to falsely arrest and wrongfully imprison [him], by taking and holding [him] inside the office of Fan Tastic Thrift, until [he] under duress agreed to leave the vicinity."  Compl. ¶ 6.  Plaintiff admits that he "resisted" this "assault" until the deputy complied with Plaintiff's request to see his badge of authority.  At that time, Plaintiff allowed himself to be handcuffed and led inside to the thrift store's office.  The deputy explained that he was not going to file charges against Plaintiff, but that this would be conditional upon Plaintiff's compliance in leaving the area.

As a result of the deputy's actions, Plaintiff brought suit against four named individuals: Robert Ellison, Diane Ellison, Dennis Kimbrough, and Dianne Kimbrough.  In his Complaint, Plaintiff also names the "Robert & Diane Ellison Family Trust," the "Dennis & Dianne Kimbrough Family Trust," and "Two Unknown Named California Corporations" as defendants.  The Complaint implies that Plaintiff's jurisdictional basis for his state-law-based tort claims is founded upon diversity of citizenship.  The Complaint states that Defendants are citizens of California, and it appears that Plaintiff is requesting $150,000 in actual damages and $750,000 in punitive damages.

In opposition to Plaintiff's Motion for Summary Judgment, Defendants submit a Declaration of

---

[1] Submitted affidavits make clear that Plaintiff was panhandling for money, and that the time of the incident was between 11:30 a.m. and 12:00 p.m.

Kendall L. Courtney (the "Courtney Declaration"),[2] an employee of Fan Tastic Thrift who witnessed the incident. In his Declaration, Mr. Courtney states that, around 12:00 p.m. on the day in question, he was walking on the sidewalk toward Fan Tastic Thrift's entrance. He was confronted by Plaintiff, who asked Mr. Courtney for some money. After Mr. Courtney declined, Plaintiff continued to ask. Mr. Courtney responded by telling Plaintiff that he should not be confronting customers at the entrance to the store. Plaintiff angrily retorted that he could do whatever he wanted to do. Once in the store, because of the store's experience with customers expressing fear associated with aggressive panhandling near the store's entrance, Mr. Courtney explained the situation to the off-duty deputy working as a store security officer. The officer asked Plaintiff to move along. In response, Plaintiff loudly demanded to see the deputy's badge of authority. When the deputy repeated his instructions to move along, Plaintiff yelled, "Make me!" At some point thereafter, Plaintiff put his hands together in front of him and told the deputy to arrest him. The deputy explained that he did not want to arrest Plaintiff and again asked Plaintiff to move along. Plaintiff continued to yell at the deputy and again told the deputy to arrest him. The deputy then handcuffed (but did not arrest) Plaintiff and escorted him into the store. After less than five minutes of detention, after Plaintiff had calmed down, the deputy uncuffed Plaintiff. Finally, Plaintiff shook the deputy's hand, apologized for his behavior, and left the area.

## II.   APPLICABLE STANDARDS OF REVIEW

**A.   Rule 12(b)(6) Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff will not be able to prove any set of facts that would entitle

---

[2] The Courtney Declaration was attached to Defendants' Reply Brief in support of their Motion to Dismiss, which doubles as their Opposition to Plaintiff's Motion for Summary Judgment.

him to relief. See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept as true the factual allegations of the challenged complaint" and "view those allegations in the light most favorable to the plaintiff." Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). To be sufficient, a complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests" so as to create a factual basis sufficient to enable the defendant to prepare a response. See Conley, 355 U.S. at 47.

In shaping its ruling on a motion to dismiss for failure to state a claim, a court can rely upon only the allegations set forth in the complaint, including documents attached as exhibits or incorporated by reference. See Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). Federal Rule of Civil Procedure 12(b) does, however, provide an exception to this limitation. A court can consider matters outside the pleading when analyzing a motion to dismiss for failure to state a claim, provided that the court "treat[s] [the motion] as one for summary judgment and dispose[s] of [it] as provided in Rule 56." Fed. R. Civ. P. 12(b).

**B.   Rule 56 Summary Judgment Standard**

A motion for summary judgment can be granted only when "there is no genuine issue as to any material fact" and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). Although the facts are construed in this manner, a court must inquire into "the genuineness and materiality of any purported factual issues." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Material facts are those which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). The determination of the genuineness of an issue "calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits." Ross, 759 F.2d at 364. An issue is genuine "when the evidence . . . create[s] fair doubt; wholly speculative assertions will not suffice." Id. A motion for summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

### III.   DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

**A.   Defendants' Arguments**

Although the Complaint does not mention 42 U.S.C. § 1983, Defendants present their Rule 12(b)(6) dismissal arguments under the premise that Plaintiff's tort claims are actually "§ 1983 [claims], given that the actions complained of allegedly were taken by an off-duty sheriff's deputy." Defs.' Mem. Supp. Mot. Dismiss 2. Defendants proffer two main arguments in support of their Rule 12(b)(6) Motion to Dismiss. First, Defendants explain that Plaintiff has not properly identified who allegedly employed the off-duty deputy at issue. The Complaint identifies the two defendant Trusts as the record title holders of the property and building and identifies Defendants Robert Ellison and Dennis Kimbrough as holders of a license issued by the City of Richmond. Defendants further state that the Complaint does not in any way allege facts that could conceivably place liability on Defendants Diane Ellison and Dianne Kimbrough.

Second, and primarily, Defendants argue that the owners of Fan Tastic Thrift cannot be held vicariously liable pursuant to § 1983 for the actions of the off-duty deputy who was performing public duties. Defendants cite case law holding that private corporations that employ sworn officers "'are not liable under § 1983 for torts committed by the officer when such liability is predicated solely upon a

5

theory of respondeat superior.'" Rodriguez v. Smithfield Packing Co., 338 F.3d 348, 355 (4th Cir. 2003) (quoting Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)).  Defendants note that when a police officer is performing the state function of an arrest, "the assumption is that state policies and state training would be guiding the exercise of that authority."  Id. at 356.  As Defendants observe, provided that a police officer is performing his public duty, a private employer will still be shielded from vicarious liability even when the employer directs the officer to take action.  Austin v. Paramount Parks, Inc., 195 F.3d 715, 731 (4th Cir. 1999).

Based upon these legal principles, Defendants contend that, while Fan Tastic Thrift management may have been able to direct the deputy to deal with the disturbance created by Plaintiff, it had no authority over applicable law enforcement policies that were delegated to the deputy by operation of law. Defendants ask the Court to either grant their Rule 12(b)(6) Motion to Dismiss or consider the Courtney Declaration, treat the Rule 12(b)(6) Motion to Dismiss as a motion for summary judgment, and grant judgment in Defendants' favor as a matter of law, pursuant to Federal Rules of Civil Procedure 12(b) and 56.

**B.     Plaintiff's Response**

In response to Defendants' arguments concerning Plaintiff's failure to properly identify the owners of Fan Tastic Thrift, Plaintiff attached to his Brief in Opposition to Defendants' Motion to Dismiss a Certificate of Partnership that names Robert Ellison, Dennis Kimbrough, and Diane Kimbrough as general partners, listing the two family trusts and California addresses for contact information.  The Certificate of Partnership provides that the name of the partnership is "Richmond Properties" and that the partnership will do business in Midlothian, Virginia.  Plaintiff also attaches a "Certificate of Assumed Name," which states that "Richmond Management Affiliates," a Virginia general

partnership, will transact business under the name of "Fan Tastic Thrift." This document is signed by only Dennis Kimbrough.

In opposition to Defendants' other arguments, Plaintiff contends that the Courtney Declaration does not allege facts amounting to any violation of law by Plaintiff. Plaintiff also cites two Supreme Court of Virginia cases stating the doctrine of respondeat superior generally, but not within the context of an off-duty police officer employed by a private company. See Giant of Maryland, Inc. v. Enger, 257 Va. 513, 515 S.E.2d 111 (1999); Davis v. Merrill, 133 Va. 69, 112 S.E. 628 (1922). Plaintiff's most logical argument is that Fan Tastic Thrift "could have utilized local police to deal with persons upon public sidewalks, but chose to use in house [sic] security to derive advantage from the acts of such off-duty deputy [sic] which were done for business reasons on behalf of Fan Tastic Thrift." Pl.'s Br. Opp'n Defs.' Mot. Dismiss 2.

**C.     Discussion**

With respect to Defendants' arguments concerning the identity of the owners of Fan Tastic Thrift, to Plaintiff's credit, he has been diligent in his efforts to ascertain this information. Realizing his need for more documentation to establish the identity of the owners of Fan Tastic Thrift, Plaintiff requested a subpoena duces tecum to obtain records from the City of Richmond relating to Fan Tastic Thrift's business license. The Court granted this request and issued an Order directing the appropriate local government official to produce the relevant document(s). For reasons unknown to the Court, the documents were not produced in a timely manner. Notwithstanding this deficiency, the Court will, for purposes of this Opinion, accept as true Plaintiff's representations as to which names actually appear on Fan Tastic Thrift's business license.

The Court's primary task is to determine whether the owners of Fan Tastic Thrift, a private

business, can be held vicariously liable for the allegedly tortious actions of the off-duty sheriff's deputy working as a private security guard for Fan Tastic Thrift.[3] Long ago, the Supreme Court of Virginia stated the general rule that, "in the absence of statute a private person or corporation is not responsible for the acts of a special officer appointed by public authority, but employed and paid by the private person or corporation, when the acts complained of are performed in carrying out his duty as a public officer." Norfolk and Western R.R. Co. v. Haun, 167 Va. 157, 160, 187 S.E. 481, 482 (1936). In Haun, a non-§ 1983 action, two special police officers had been hired to keep watch over a railroad yard, where coal had been stolen several times. When the officers observed three thieves stealing coal one night, they attempted to arrest the thieves, who quickly ran separate ways. The two officers each shot at the thieves, one of whom nearly died from his wounds. In a suit for negligence, the court held that the officer whose shot nearly killed one of the thieves "was acting in the discharge of his public duty in an attempt to enforce the criminal laws, and not in the capacity of servant of [the] defendant." Id. at 167, 187 S.E. at 485. The court further explained that a "special police officer for a railway company, though occupying a dual role, will be presumed to have acted in pursuance of his public duty when attempting to arrest a violator of the law." Id. at 166, 187 S.E. at 485.

The Supreme Court of Virginia reaffirmed the gist of the Haun holding in Glenmar Cinestate, Inc. v. Farrell, another non-§ 1983 action. 223 Va. 728, 292 S.E.2d 366 (1982). In Glenmar, the court explained the proper test to be:

> [I]n what capacity was the officer acting at the time he committed the acts for which the complaint is made? If he engaged in the performance of a public duty such as the

---

[3] It is, for all intents and purposes, irrelevant whether Plaintiff has brought this action under § 1983 or pursuant to Virginia common law tort principles. As illustrated by the discussion below, the guiding case law applies equally to common law tort actions as it does to § 1983 civil rights violation actions.

> enforcement of the general laws, his employer incurs no vicarious liability for his acts, even though the employer directed him to perform the duty. On the other hand, if he was engaged in the protection of the employer's property, ejecting trespassers or enforcing rules and regulations promulgated by the employer, it becomes a jury question as to whether he was acting as a public officer or as an agent, servant, or employee.

Id. at 735, 292 S.E.2d at 369–70. The Glenmar case involved an off-duty police officer hired by a drive-in theater to direct traffic. The officer received no instruction from the theater regarding his duties on a given night. Rather, he would perform his traffic-directing duties according to how he had been trained as a police officer. Even though the plaintiff pointed out that the drive-in owner had reserved a right to specify how the police officer performed his job, the court observed that vicarious liability would be appropriate only if the drive-in owner had "a right to specify *results* rather than means or methods." Id., 292 S.E.2d at 269 (emphasis added). Ultimately, the court concluded that, because the officer was physically standing in a public highway at the time of the incident, and because the officer was engaged in the performance of a public duty by directing traffic on the highway, vicarious liability was not appropriate. Id., 292 S.E.2d at 270.

The Fourth Circuit recently relied upon and rearticulated the Haun and Glenmar holdings in the context of a § 1983 suit brought against a private amusement park. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 731–32 (4th Cir. 1999). In Austin, a park patron brought suit against Paramount's Kings Dominion for the actions of certain park employees serving as special park police officers, but working under the official supervision of the local sheriff's department. Citing Haun and Glenmar, the court noted that "a private employer may not be held liable under a theory of respondeat superior for torts committed by a special police officer when he or she acts as a public officer, as opposed to an agent, servant, or employee of the employer." Id. at 731. In reversing the district court's denial of the defendant's Rule 50(b) motion for judgment as a matter of law and vacating the judgment in favor of the plaintiff, the

Fourth Circuit concluded that it was "without question . . . that [the special police officer] effected [the plaintiff]'s arrest . . . in the course of performing her public duty to enforce the Commonwealth of Virginia's [criminal] law[s]." Id.

In reference to the facts presently before the Court, the central issue is whether the off-duty deputy was engaged in the performance of his public duties when he handcuffed Plaintiff on the sidewalk and detained him in Fan Tastic Thrift for approximately five minutes. If so, then Defendants cannot be held vicariously liable for the deputy's actions. Conversely, if the deputy was acting solely to protect Fan Tastic Thrift's business, eject Plaintiff as a trespasser, or enforce a rule promulgated by Fan Tastic Thrift, vicarious liability might be appropriate.

The facts on the record reveal that the off-duty deputy was first alerted of Plaintiff's presence by an employee of Fan Tastic Thrift, who asked the deputy to go outside and speak with Plaintiff. The deputy's initial motivation in exiting the store to speak with Plaintiff was arguably to protect Fan Tastic Thrift's business—specifically, to protect its customers from being accosted for money on their way into the store. Significantly, though, at the point where the deputy's actions allegedly became tortious, he was acting in his capacity as a public officer with probable cause to detain Plaintiff in an effort to preserve the peace on a public sidewalk. The Fourth Circuit has held that a plaintiff suing a private corporation for the acts of an off-duty police officer can have a viable claim only if the officer had no probable cause to arrest or detain an individual. See id. ("[T]he only viable factual predicate for [Plaintiff]'s [respondeat superior] claims is that [the officer] lacked probable cause to effect the . . . arrest . . . ."). Defendants contend that, after refusing "a lawful order to move along" and stop aggressively panhandling, Plaintiff became "verbally combative [and] disturb[ed] the peace." Defs.' Reply Br. 5. The deputy handcuffed and temporarily detained Plaintiff only after Plaintiff had become loud, defiant, and verbally abusive.

Although Defendants do not cite any statutory justification for the deputy's actions, a search of the Virginia Criminal Code reveals several relevant Code provisions, one of which provides:

> **Disorderly conduct in public places**. A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>   A. In any street, highway, public building, or while in or on a public conveyance, or public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed . . . .

Va. Code. Ann. § 18.2-415 (Repl. Vol. 2004).

It is the Court's judgment that the deputy was clearly acting within the scope of his duties to enforce the general public laws, prevent disorderly conduct, and preserve the peace when he handcuffed and temporarily detained Plaintiff. The facts before the Court indicate that Plaintiff's behavior escalated from aggressive panhandling to verbal abuse and stubborn, instigative defiance of a sheriff's deputy's lawful order on a public sidewalk. Tellingly, Plaintiff apologized to the deputy for his behavior before he left the premises of Fan Tastic Thrift.

In order to consider all the material facts, the Court will treat Defendants' Rule 12(b)(6) Motion to Dismiss as a motion for summary judgment, which allows the Court to consider the Courtney Declaration. In converting Defendants' Motion into a motion for summary judgment, the Court is mindful of Plaintiff's right to present counter affidavits to oppose the assertions made in the Courtney Declaration. See Fed. R. Civ. P. 12(b); see also Plante v. Shivar, 540 F.2d 1233, 1235 (4th Cir. 1976). The facts detailed in the Courtney Declaration paint a comprehensive picture of Plaintiff's behavior leading up to his encounter with the deputy. On the day of the hearing on this Motion, Plaintiff presented to the Court two affidavits signed by apparent eyewitnesses.[4] Notably, although their respective accounts are less detailed than the Courtney Declaration, neither affidavit actually contradicts the version of the

---

[4] Counsel for Defendants had not seen these two affidavits prior to the hearing.

11

facts provided in the Courtney Declaration. Consequently, seeing no genuine issue of material fact for trial, the Court can resolve this Motion based upon the applicable legal principles. See Fed. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but *the adverse party's response, by affidavits or as otherwise* provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*."). For the reasons already discussed, Defendants' Rule 12(b)(6) Motion to Dismiss, viewed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b), will be granted.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The arguments for and against Defendants' Rule 12(b)(6) Motion to Dismiss and Plaintiff's Motion for Summary Judgment mirror each other and share the same controlling facts. Plaintiff's Brief in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss doubles as his Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment. Likewise, Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment is also Defendants' Reply to Plaintiff's Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss.

As already explained, no genuine issue of material fact exists. It is, therefore, immaterial that Plaintiff failed to comply with Local Civil Rule 56(B) by not including a statement of undisputed facts in support of his Motion for Summary Judgment. See E.D. Va. Loc. Civ. R. 56(B). For the same legal reasons which the Court articulated in granting Defendants' Rule 12(b)(6) Motion to Dismiss, Plaintiff's Motion for Summary Judgment must be denied.

### IV. PLAINTIFF'S MOTION FOR SANCTIONS

In his Motion for Sanctions filed in conjunction with his Motion for Summary Judgment, Plaintiff asks the Court to impose a monetary sanction of $2,500 against defense counsel for allegedly presenting

unsupportable positions of law and making false representations of fact. A fair reading of the pleadings does not uncover any grounds for the imposition of sanctions. Moreover, Plaintiff's Motion for Sanctions is procedurally barred under Federal Rule of Civil Procedure 11(c)(1)(A) for two reasons. First, he did not file the Motion separately from his Motion for Summary Judgment. Second, he did not serve the Motion on defense counsel twenty-one (21) days before filing it with the Court. Accordingly, Plaintiff's Motion for Sanctions must also be denied.

## V.   CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss, viewed as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(b), is hereby GRANTED. Plaintiff's Motions for Summary Judgment and Sanctions are both hereby DENIED.

An appropriate Order shall issue.

/s/
James R. Spencer
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this  2nd  day of May 2006